**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

DARREN JOHNSON, #327-301          :

   Plaintiff                                    :

      v.                                        :          Civil Action No.  JFM-11-2850

WARDEN                                      :
AVA JOUBERT, M.D.
M. J. SABATELLI                          :
LAURA RUSSELL, Supervisor
                                                           :
   Defendants

o0o
**MEMORANDUM**

Before the court is self-represented plaintiff Darren Johnson's ("Johnson") prisoner civil rights complaint under 42 U.S.C. § 1983. Defendants, Corizon, Inc., Lauri Russell,[1] Mary Jo Sabatelli,[2] and Ava Joubert, M.D., by their counsel, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment  (ECF No. 14).  Warden John P Morgan, by his counsel, has filed a separate Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 17).  Plaintiff was provided opportunity to reply but has not done so. The issues are briefed, and the court now rules pursuant to Local Rule 105.6 (D. Md. 2011), no hearing being necessary.  For the following reasons, defendants' motions for summary judgment will be granted.[3]

**BACKGROUND**

Darren Johnson, an inmate formerly incarcerated at the Western Correctional Institution ("WCI"), and currently incarcerated at the Patuxent Institution, states that he has suffered from various medical issues since 2007, including pain in his lower back and right shoulder, numbness in

---

[1]  Lauri Russell formerly served as Health Services Administrator at Western Correctional Institution ("WCI").

[2]  Mary Jo Sabatelli presently serves as Health Services Administrator at WCI. The court shall direct the Clerk to amend the docket to show defendant's name is Mary Jo Sabatelli.

[3]  The pleadings will be treated as motions  for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the four corners of the pleadings have been considered.  *See Bosiger v. U.S. Airways*, 510 F.3d 442,450 (4th Cir. 2007).

his right leg and feet, diabetes, and "a severe case of diarrhea with stomach problems." Complaint, at 1.  He claims he has received constitutionally inadequate medical care because: 1) the WCI medical department lacks a system to enable inmates to prove they have placed sick call slips; 2)  his pain relief medication has constantly been changed by subsequent doctors after being set by an initial doctor, *see id*. at 2, and;  3) Dr. Joubert and Medical Director Laura Russell failed to provide and ensure proper medical treatment in response to his sick call complaints filed "12-3-09, 2-4-10, 3-2-11, 5-13-11, 9-25-11, 10-5-11, and 10-13-11,"  ECF No. 3 Supplement to Complaint, at 8. As relief, Johnson asks this court to order WCI to provide proper medical treatment,[4] and to award him damages for his "sufferings." *Id*.

## FACTS

Verified copies of Johnson's medical records show he filed numerous Requests for Administrative Remedies (ARPs) while at WCI alleging that he had received improper medical care since 2009.  ECF No.  They are summarized below.

> **December 3, 2009** Johnson filed an ARP complaining of eye problems and that he had diarrhea for six months. Exhibit 1, ARP No. 120309 and Case Summary, at 1.  Johnson claimed that Dr. Mickel was "giving [him] the runaround because nothing was working, and that he had written to another doctor and a medical supervisor for help but received no response." *Id*.  Upon investigation of his ARP, it was found Johnson had been seen several times in the medical department for diarrhea, and that an x-ray and CT scan of his abdomen returned normal results. *See id*. at 5.  Investigation also found that Dr. Mickel was requesting a colonoscopy for Johnson and his medication had been adjusted. *See id.* The ARP was dismissed on February 26, 2010, based on these findings.
>
> **February 4, 2010** Johnson filed an ARP which included some of the same allegations from the December 3, 2009 ARP. Exhibit 2, ARP No. 020410, at 1-2. The ARP was

---

[4]  Johnson's transfer from WCI to Patuxent Institution rendered his request for injunctive relief moot. WCI is no longer able to provide the relief Johnson requests because he is no longer incarcerated there.  If developments occur during the course of a case so that the court is unable to grant a party the relief requested, the claim(s) must be dismissed as moot. *See Blanciak v. Allegheny Ludlum Co*., 77 F.3d 690, 698–99 (3d Cir.1996). Transfer or release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987).

procedurally dismissed as repetitive. *See id*. p.1.

**March 2, 2011** Johnson filed three ARPs concerning his healthcare on the same day. In ARP No. 042811, he alleged that he had been without diabetic medication for more than two weeks. Exhibit 3, 03-02-11 ARP No. 042811 and Case Summary, at 1. Investigation revealed Johnson was given 30 tablets of Glucotol on January 18, 2011, and that he was scheduled to receive a new blister pack on February 18, 2011, but did not receive it until March 3, 2011. *See id*. at 3. Based on these findings, Warden Morgan concluded that Johnson's claim was meritorious on March 24, 2011, and took remedial action to ensure that there were no further lapses in the administration of medication. *See id*. at 1.

In ARP No. 043011, Johnson complained about pain suffered in his right shoulder since late 2007 or early 2008, and a decrease in the amount of physical therapy he received between 2007 and 2010. Exhibit 4, ARP No. 043011 and Case Summary, at 1. Johnson claimed the medical department was neglecting him, his pain worsening, and that each physical therapist he had seen told him that he needed an outside doctor or specialist. *See id*. at 2. After investigation, it was determined that Johnson had been examined multiple times for chronic shoulder pain, there was no documentation an outside medical evaluation was indicated, and he had been discharged from physical therapy to self-management on September 2, 2010 because his goals were "partially met[,]" and his x-rays showed no "significant abnormality." *Id*. at 3. Investigation further noted that Johnson was receiving medication for his shoulder pain and received a steroid injection on October 16, 2010. *See id*. Additionally, the investigator reported that Johnson had complained of increased pain while admitting to healthcare providers that he continued to play both basketball and football. *See id.* Based on these findings, ARP No. 043011 was dismissed by Warden Morgan on March 24, 2011. *See id*. at 1.

In ARP No. 042911, Johnson complained of suffering diarrhea, facial swelling, and red eyes. Exhibit 5, 03-02-11 ARP #042911 and Case Summary at 1. Johnson claimed his medical issues were being neglected by his new healthcare provider, Dr. Joubert. *See id.* at 2. Investigation revealed that Johnson underwent a colonoscopy on January 26, 2011, with results within normal parameters. *See id*. at 3. Johnson was also scheduled for an appointment with a physician at Bon Secours Hospital on April 12, 2011. *See id*. The ARP was dismissed by Warden Morgan on March 30, 2011. *See id*. at 1.

**May 13, 2011** Johnson filed an ARP No. 091711, alleging that on three occasions medical staff improperly distributed his medication after 11:00 p.m. which is not the standard time. Exhibit 6, ARP No. 091711 and Case Summary, at 1. The ARP was dismissed on June 15, 2011 after an investigation concluded that medicine distribution times are occasionally delayed due to medical emergencies requiring the attention of medical staff. *See id*. at 1, 3.

**September 25, 2011** Johnson filed ARP No. 188511, claiming that WCI medical staff had not followed an outside specialist's recommendation to increase two of his medications to three doses per day. Exhibit 7, ARP No.188511 and Case Summary, at1-2.

3

    The ARP was dismissed on November 8, 2011 because WCI medical staff is not bound by the recommendations of off-site specialists. *See id*. at 1.

    **September 29, 2011** Johnson filed ARP, No. 19191 in which he alleging a nurse had been blocking his sick call slips since September 27, 2011 and prevented him from being seen by a doctor. Exhibit 8, ARP No.191911 and Case Summary, at 1. The ARP was dismissed after investigation revealed that Johnson had submitted several sick call slips between September 28, 2011 and October 4, 2011, and was seen by health providers three times between September 26, 2011 and October 10, 2011. *See id*. at 2.

    **October 3, 5 and 13, 2011**, Johnson submitted three ARPs all of which were procedurally dismissed as repetitive to previous claims. Exhibit 9.

Johnson did not appeal any of the adverse decisions to his ARPs "because it seem[ed] like the system had made up it's [sic] mind that [he] was going to be denied on [his] appeals as well." Complaint supplement, ECF Document No. 3, at 2.

In support of his dispositive pleading, Warden Morgan has also submitted his affidavit attesting that his "responsibilities are solely to act as chief administrator of WCI.... It is beyond the scope of [his] job title... to perform any kind of medical, dental, or mental health treatment on a patient or prescribe a particular course of treatment." Exhibit 10, Declaration of Warden J. Philip Morgan, at ¶2. Warden Morgan further declares that he exercises no "supervisory control over the medical care providers," and lacks authority to "dictate the kind of treatment a patient is to receive," or to "influence the medical decisions of the private health care providers contracted to work with the state." *Id*. at ¶3. Warden Morgan attests he "neither interfered with nor delayed the provision of health care to inmate Johnson." *Id*. at ¶4.

In support of their Motion for Summary Judgment, the Medical Defendants have filed copies of Johnson's pertinent medical records to demonstrate that his medical concerns at issue were addressed. ECF No. 14, Exhibit D. Care for his shoulder pain has included physical therapy, medication, diagnostic x-rays, and a steroid injection. *See id*. As a health services administrator,

4

Mary Jo Sabatelli state that her duties "included but were not limited to onsite management of the medical department, investigation of inmate grievances related to inmate medical issues, and insuring that Corizon met its various contractual obligations." Exhibit D, ¶ 3. (affidavit of Mary Jo. Sabetelli). She attests that she is not a physician, and "was not responsible for making diagnoses, providing medical care, or determining the medical necessity of any treatment or plan of care. " *Id.* ¶¶ 6-7.

### STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must demonstrate through the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that a reasonable jury would be unable to reach a verdict for the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317(1986). When this burden is met, the non-moving party then bears the burden of demonstrating that there are disputes of material fact and that the matter should proceed to trial. *See Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Further, the court must construe the facts in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S.

654, 655(1962); *In re Apex Express Corporation*, 190 F.3d 624, 633 (4th Cir. 1999).

A federal court must liberally construe pleadings where, as here the plaintiff is a self-represented litigant, in order to allow development of potentially meritorious cases. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.

## DISCUSSION

### A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Warden Morgan raises Johnson's failure to exhaust his administrative remedies as an affirmative defense in this case. As noted, Johnson states that he failed to appeal any of the adverse decisions to his ARPs "because it seem[ed] like the system had made up it's mind that [he] was going to be denied on [his] appeals as well." 5

Under the Prison Litigation Reform Act of 1995 (PLRA), prisoners are required to "... exhaust such administrative remedies as are available prior to filing suit in federal court." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (internal quotation marks omitted) (quoting 42 U.S.C. § 1997e(a). The PLRA applies to "all inmate suits about prison life, whether they involved general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Before bringing suit in federal court, "a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Id*. (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Exhaustion is mandatory and unexhausted claims may not be brought in court. *See Jones v. Bock*, 549 U.S. 199 (2007).

---

5  The court declines to dismiss the claims against the Medical Defendants on the basis of non-exhaustion, it appearing that use of the ARP process for medical issues should not be part of the grievance process. *See e.g. Wilson v. Maryland Division of Corrections*, 2001 WL 2118956 n. 4.

Johnson is required under the PLRA to properly exhaust all administrative remedies prior to filing suit but, as he acknowledges in his complaint, he has failed to do so.  He provides no factual predicate for his conclusory and self-serving statement that an appeal would provide futile, consequently,  his claims against Warden Morgan must be dismissed due to failure to exhaust administrative remedies.

## B. EIGHTH AMENDMENT

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  When prison officials  show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id*. at 104.  The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  *See Miltier v. Beorn,*  896 F.2d 848, 851 (4th  Cir. 1990). Prison officials are entitled to rely on medical judgments and expertise of prison physicians and medical personnel concerning the course of treatment deemed necessary for prisoners. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Miltier* 896 F.2d at 854–55 (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).

 A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*,

511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *See Miltier v. Born,* 896 F.2d 848 (1990). An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

Johnson's claims of inadequate medical care fail to meet the standard for establishing a violation of constitutional magnitude. First, Warden Morgan was entitled to rely on the judgment of medical professionals. There is no allegation presented that Warden Morgan interfered with the administration of his medical care. Johnson's ARPs were investigated by corrections personnel, Johnson was informed of findings, and follow-up was conducted as appropriate.

In regard to the medical defendants, Johnson fails to specify how Dr. Joubert allegedly failed to provide adequate medical treatment and acted with deliberate indifference to his serious medical needs. His allegation that he is "constantly being given and taken off pain medication cold turkey," does not appear to focus on Dr. Joubert. Complaint, at 2. Moreover, even when viewed in the light most favorable to him, Johnson's allegation fails to amount to show deliberate indifference. An inmate may disagree with his treatment or the treatment might be negligent, but deliberate indifference demands more. Here, Johnson's verified and undisputed medical records show that he was seen by medical providers, received diagnostic tests, and been prescribed medication and other courses of treatment for his complaints of chronic pain and diarrhea. Further, Johnson fails to provide any factual basis for his claims that the Health Services Administrators failed to properly oversee his treatment. As noted, the Health Administrator does not make

diagnoses, provide medical care, or determine the medical necessity of a course of treatment. *See supra*, p. 5.

To the extent the complaint names Corizon, the contractual medical provider,[6] based solely upon vicarious liability, the doctrine of respondeat superior generally is inapplicable to § 1983 suits. An employer or supervisor is not liable for the acts of employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694, (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Department of Public Safety and Correctional Services*, 316 Fed. Appx. 279, 282 (4th Cir. 2009). Accordingly, there is no legal basis to hold Corizon liable in this case.

Lastly, Johnson's claim the WCI medical department lacks a system to enable inmates to prove they have placed sick call slips does not state a cognizable federal claim; Johnson fails to specify any federal law or constitutional provision violated in this regard.

## CONCLUSION

For these reasons, the court will grant summary judgment in favor of all defendants. A separate order follows.

_June 25, 2012_____  _____/s/_____
Date                     J. Frederick Motz
                         United States District Judge

---

[6] The court takes notice that Corizon is a private corporation that contracts with the State of Maryland to provide medical services to inmates at certain state institutions.